Oral argument not to exceed 15 minutes per side and when ready Mr. Pickrell for the appellant. May it please the court. My name is Mark Pickrell and I represent the appellant in this case in Cantoia Brown. I've requested three minutes for rebuttal. This is a federal habeas appeal involving two issues that were certified by the district court for review by this court. The first issue certified by the district court for review is whether Ms. Brown's mandatory life sentence is unconstitutional. The second issue certified by the district court for review by this court is whether Ms. Brown possessed sufficient mens rea in order to be convicted of first degree murder in light of the evidence presented in the state courts. Ms. Brown respectfully submits that with regard to the first issue, the decision of the Tennessee Court of Criminal Appeals is contrary to the United States Supreme Court decision in Miller v. Alabama. With regard to the second issue, Ms. Brown respectfully submits that the decision of the Tennessee Court of Criminal Appeals was an unreasonable determination of the facts in light of the state court record and was contrary to Henry Winship and Patterson v. New Jersey as well as Jackson v. Virginia. Because Ms. Brown's continued incarceration is in violation of the United States Constitution, Ms. Brown is entitled to issuance of the writ of habeas corpus pursuant to 28 U.S.C. 2240. With regard to the first issue, the decision of the Tennessee Court of Criminal Appeals was contrary to Miller v. Alabama. In Miller v. Alabama, the Supreme Court clearly held and clearly established that the states must provide a meaningful opportunity for juvenile criminal defendants to demonstrate maturity and rehabilitation. So is the question, just so I understand it, in this case, whether the defendant's sentence, as I think you phrased it in your brief, amounts to a functional life sentence? Because she is eligible for parole, so that distinguishes Miller. Your Honor, if I may say, Tennessee law on this issue is not clear. Well, let's assume that Vaughn says she would be eligible for parole, which is the highest. That's the Tennessee Supreme Court, right? It is. Okay, so just assume that for a second, just for the purposes of my question, and then you can come back and explain why Tennessee law is unclear. If she is eligible for parole, Miller is distinguishable, and then the question becomes, is it a functional – your argument is, in essence, it's a functional life sentence, correct? Your Honor, no. Okay, go ahead. Okay, and that's why the language in Miller that the states must provide a reasonable opportunity for juvenile defendants to demonstrate maturity and rehabilitation is violated by the Tennessee statute in question here. It's that holding of the Supreme Court in Miller that was contradicted by and was contrary to the decision of the Tennessee Court of Criminal Appeals. And Miller deals – correct me if I'm wrong – with life without parole. So, I mean, the key is, is Miller says you can give a juvenile defendant life without parole in a homicide offense if you consider their youthful characteristics, and I'm shorthanding it, I know. Right? Correct. In fact, if Your Honor looks at the decision in Miller v. Alabama, Justice Kagan actually gave the states two ways to have a constitutional parole scheme for juveniles or a sentencing scheme for juveniles. The first is individualized sentencing where the defendant's youth and immaturity may be taken into consideration in determining an appropriate sentence. And the second one is to have a parole scheme that, as Justice Kagan wrote, provides – must provide – a meaningful opportunity to demonstrate maturity and rehabilitation. Neither one of those schemes is possible under Tennessee's existing statutory scheme, even if Vaughn's statement about whether somebody's entitled to parole after 51 years is true or not. Well, why would – why would Vaughn's statement, which is the Tennessee Supreme Court, about first-degree murder be true? Because the issue presented in Vaughn, Your Honor, was an ineffective assistance of counsel claim where the issue was did the trial attorney violate the Sixth Amendment or Tennessee's equivalent of the Sixth Amendment by failing to object to an incorrect statement regarding the amount of sentence that the defendant must be sentenced to. And the issue didn't matter whether it was 51 years or life. So let me ask you a question. Can we certify that to the Tennessee Supreme Court and ask them if a life sentence in Tennessee creates eligibility for parole? You can and you should, and because of the Tennessee Court of Appeals decision in Myrick, it is particularly important and would be very advisable for this Court to certify that issue to the Tennessee Supreme Court. Myrick is a different Court of Appeals. Tennessee has two different Courts of Appeals, the Court of Criminal Appeals and the Court of Appeals. And the Court of Criminal Appeals has taken the position that people who are convicted of first-degree murder are eligible for parole after 51 years. I'm sorry. Are or are not? Are. Are eligible for parole after 51 years. That's the Tennessee Court of Criminal Appeals. That's correct. And the Tennessee Court of Appeals in the Myrick case, which I will pen it into the brief. I thought that was a second-degree murder case. It was a second-degree murder case, but the subsection involved, Your Honor, does not make a distinction between first-degree murder and second-degree murder. The language of the Tennessee statute could not be clearer. For convictions of either first-degree murder or second-degree murder after July 1, 1995, a defendant is not eligible for parole under the statute. That is subsection I. Why is it? Okay, so tell me. I don't want you to argue against yourself, but I'm going to ask you just a question. Let's assume that you're right and she's not eligible for parole after. Why isn't this a one-sentence opinion you win under, Milton? It should be, Your Honor. Absolutely. And that's why I'm the one – Ms. Brown threw me as the one who said this ambiguity in Tennessee law should be resolved by the Tennessee Supreme Court in the interest of judicial efficiency and comedy between the federal courts and the state courts because this is ambiguous. The court said the issue was ambiguous. The statute could not be clearer. The statute is unambiguous. If you're convicted of first or second-degree murder after July 1, 1995, you are not eligible for parole. Okay, and I'm going to ask the other side that, but so – yeah, if you're right – maybe I'm missing something, but I think it makes our job very easy, but okay. So let's assume you're wrong to make the argument interesting. Okay. Can I just ask one question before we get off certification? So – and again, correct me if I'm wrong here, but my understanding of the Tennessee Supreme Court certification procedures, and I could be totally wrong, is that they will only take the question that is dispositive. Am I wrong about that and – or right? And either way, does that affect – I mean, would this question be dispositive such that – I think it would absolutely be dispositive because, as Judge Lafarge said, if the Tennessee Supreme Court rules that Ms. Brown is not eligible for parole, then she is entirely and unambiguously eligible for federal habeas corpus relief. So that is the definition of dispositive. Yeah. I mean, I guess if they rule the other way, it's not dispositive, but that has to be the definition of a dispositive question. Okay, thank you.  And that's the issue. Do you have any information about the frequency with which the Tennessee Supreme Court answers questions that are certified to it? It is a rare event, Your Honor. Is that quite rare? Your Honor is from the state of Tennessee and I think is well aware of the frequency. I think it's a question of comedy. This is an ambiguous question of Tennessee state law. If they're ever going to answer one, isn't this one they would answer? It should be. And in particular, imagine a tragedy if this court were to rule that she is entitled to eligibility for parole after 51 years. That's non-binding on the Tennessee courts. And so after 51 years, she applies for parole and says, hey, the Sixth Circuit said I was eligible for parole. The Tennessee state courts say, no, you're not. Well, then I was entitled to federal habeas release 25 years ago. Oh, well, that's too bad. That type of miscarriage of justice should not even be on the table. And that's why, Your Honor, we recommend that you certify the question. If the Tennessee Supreme Court doesn't want to decide the issue, and obviously that's within their power, Ms. Brown respectfully submits that either way the Tennessee Supreme Court rules, that the Tennessee Court of Criminal Appeals decision was completely contrary to the Supreme Court's decision in Miller v. Alabama. And that's why that issue – and the question really is, okay, so after Miller v. Alabama, excuse me, after Miller v. Alabama, what should states do? Well, the answer is they can either have individualized sentencing or they can have a meaningful parole system that lets juveniles at the right time, when there's been sufficient time, demonstrate maturity and rehabilitation. Fifty-one years is way past, and the evidence shown in the state court showed that with regard to Ms. Brown, fifty-one years is well past the point in time in which she should be capable of demonstrating maturity and rehabilitation. So let's – I agree with everything you said about Miller and that we should certify it and figure it out. That sounds like a sensible solution. But the last point is what I want to ask you about, which is the fifty-one years. Why isn't Bunch controlling in that case? Because in Bunch, right, they said he wouldn't be eligible for release until he was 95, irrespective of his youthful characteristics. And they said neither Miller nor Graham applied, and it's a published case of our court, so wouldn't we have to take this en banc to get to that solution? And that presupposes that Tennessee would say she's eligible for parole. Your Honor, if you could refresh my recollection of the facts of that case. So Bunch was a 89-year sentence for a youthful offender, and it was maybe three sentences, but they were all consecutive, and everyone stipulated he would not be eligible for release until 95, until age 95. And it's a published decision of our case, the court, referencing Graham because it was not homicide, but at the end it also referenced Miller and said until the Supreme Court says differently, we are not at liberty to displace this because it is not a mandatory life sentence without the eligibility of parole, period, full stop. And they talked about functional life equipment. Correct, Your Honor, and what did the court say with regard to the language in Miller that the states must provide a meaningful opportunity to demonstrate rehabilitation and maturity? They said that that was, so that is a Graham-Miller thing, which are the life without parole sentences, which this was not. They said that only applies in life without parole. And, Your Honor, Ms. Brown respectfully submits that the ruling of the United States Supreme Court in Miller is broader than simply saying, in fact, the court specifically says they're not saying that the issue is just about life without the possibility of parole. Can I ask one more question? But my point is that if that is published precedent of our court, even if you disagree with it, aren't we stuck with it except for a non-bonk ruling of our court or the Supreme Court? Your Honor, my recollection of that case, and I don't recall if this was cited by the State of Tennessee or not, but my recollection of that case was that it is distinguishable. I don't think either of you cited it, to be fair. Go ahead. Yeah, I mean, and the reason why I didn't cite it was because I believed that it was totally distinguishable, and I did cite the unpublished decision on this issue. Stark. The Supreme Court was aware of it. Yeah, Stark. I appreciated that. Okay, and so you're going back to the early part of my brief writing. My recollection of that case was it was completely distinguishable. It wasn't cited by the State of Tennessee, and so it was not something that was addressed in the reply either. But to the extent that the court believes that it is binding, obviously, under the prior panel rule, if the court concludes that that decision is binding and that this court has no choice, and that is the effect of the prior panel rule, and Your Honor is correct, the solution is to unbonk this. But— Well, we would have to vote first, and then our colleagues would have to unbonk it. That is correct. And, Your Honor, that's why I'm a little bit—I'm trying to remember a case that I researched nine months ago, six, eight months ago, something like that, that was not cited by the State of Tennessee, so I feel a little bit of a disadvantage here discussing that case. My recollection, though, is quite strong. I believe that it was distinguishable. Okay, and I'll let you sit down. The reason I found it is Stark cites it in footnote one, so that's how—just to tell you where I got it. It was through your citation of Stark, which I appreciate. So thank you. Thank you, Your Honor. All right, we'll hear from you, Mr. Bledsoe. Mr. Chief Court, Tom Bledsoe, on behalf of the respondent— Maybe you could start out by telling us whether you agree with Mr. Pickrell's assessment of the uncertainty of the law with respect to whether Ms. Brown would, in fact, be eligible for parole. I do disagree, actually. That's what I wanted to start with, unpack the state law. Why don't you show it in the same direction? I will say the respondent does not have a vigorous objection to the court certifying the issue, but I'd like to kind of unpack the state law issue to point out it's not as unclear as the petitioner has advocated. You have the interplay between subsection H and subsection I of Tennessee Code Annotated 40-35-501. Subsection H, as pertinent here, states essentially three things. A life sentence is treated as 60 years. Sixty percent of that 60 years must be served before there is released eligibility consideration onto parole. And third, in any event, 25 calendar years must be served before there can be any release. That's H. Do you concede if it's life without parole we have a Miller problem? If it is a pure life sentence where she has no ability to get out, I agree that is a Miller problem. So you're sympathetic to her concern that we're trying to guess what Tennessee is doing here, and yet a simple certification would prevent her from getting 51 years down the road and finding out that Tennessee views this differently. We have no big problem with the certification. We don't have the concern the petitioner has because the law is not unclear. Can you talk about it? Yes, sir. I was enacted and applies to offenses that occurred on or after July 1 of 1995. I covers multiple different criminal offenses, including first-degree murder. It makes no reference to life being 60 years. It simply says for this list of offenses, there is 100% service required. And so there's no – you don't serve a portion and then are released. It is 100% service, except you may accrue credits while confined. However, the application of those credits to reduce the overall term of confinement is limited to 15%. This became an issue fairly quickly in Tennessee as to how to apply I for first-degree murder offenses because the General Assembly included first-degree murder in I. But it did not include the life is 60 years from H in I. The Attorney General's Office in January of 1997, so a year and a half after this went into effect, issued an opinion attempting to reconcile and give effect to the General Assembly's intent of enacting I the way it did without repealing H. And that opinion stated that the portion of H that says life is 60 years continues to apply. So a life sentence is 60 years. You may reduce the overall term through the accumulation of credits, but that accumulation is limited to 15%. So who was being bound by this Tennessee H? Was the parole board bound by that? Well, we have Vaughan that comes later. I think Vaughan is what binds everyone. This is what set the stage for lower Tennessee court opinions to construe the statute. But that's where you get 51. I mean it's often repeated that a life sentence in Tennessee is 51 to 60 years. 51 to 60 aren't in law. What happened to the Attorney General's opinion then in the courts? It was cited approvingly by the Supreme Court in Vaughan. But Vaughan wasn't in effective assistance of counsel. Vaughan was in effective assistance because the law at the time of the trial in the Vaughan case required that the jury be instructed on the sentencing range. The offense in Vaughan occurred July 2, 1995. And at the time of trial, counsel was not aware of the change. So H was instructed to the jury as the sentence, not I. So the issue was in effective assistance, but it was in effective assistance with regard to what the law was and what counsel should have done. So construing what the law was at the time was squarely presented by Vaughan. So do you tell the jury in Tennessee – I don't know. I mean I've never done – Yes, you have. Yes, I'm from Tennessee. But I've never done criminal law in Tennessee except looking at it through the prism of the habeas case. What do you tell the jury about all this? Well, you don't anymore. What? You don't anymore. That law was repealed long ago. It's somehow in the 90s. They don't do sentencing. No, no, no. They don't do sentencing and you don't inform your jury about the sentencing range. You no longer inform the jury about the sentencing range. But at the time of the Vaughan trial, you did. So that was how Vaughan had that particular issue. My point is I don't think it's enough to say, well, that was in effective assistance. But it turned on what the sentencing law was. My own point for Vaughan was – but I don't want to belabor the point. I realize the court, in its discretion, committed a recertification order. But I kind of want to point out what the state's position would be before the Tennessee Supreme Court if you did that. And why we see no ambiguity here. Vaughan does – there's language in Vaughan that says age applies to pre-July 1, 1995 cases and that I applies to post-July 1, 1995 cases. But in Vaughan itself, three separate times, once during discussing the procedural history and what happened in trial, twice in the analysis on the deficient performance issue, the court points out that for offenses that occur on or after July 1, 1995, release is allowed after 51 years. You only get to 51 years if you, consistent with the attorney general opinion, take that portion of age that life is 60 and apply it in I. And a host of court decisions, including decisions from this court, after Vaughan, have cited Vaughan for the proposition that a sentence of life imprisonment in Tennessee is 51 to 60 years. Where is there any place in the Tennessee scheme that Ms. Brown's age and rehabilitation would be taken into account? For a life sentence, it is not because if a notice to seek enhanced punishment, which for a juvenile offender for first-degree murder could only be life without the possibility of parole because death penalty is not available. If no notice is filed and if a conviction of first-degree murder is entered, the sentence is life in prison. So I mean I understand how that gives rise to a claim of Miller, but what Tennessee courts have consistently concluded, including in the post-conviction decision by the Tennessee Court of Criminal Appeals here, is that Miller – the Tennessee's scheme of imposing a life imprisonment is 51 to 60 years, and Miller does not disallow it. Now, I would – moving to the meat, the substance of the claim – the issue of course – Wait. Do you have the language of I in front of you? I do not. Okay. Then just go ahead. Okay, okay. It has changed a little bit over the years, but the portions I've talked about have not, that initial part about listing first-degree murder. The language now says there shall be no release eligibility for a person committing an offense, like you just said, on or after July 1st that is enumerated in subdivision I-2, and that includes murder in the first degree. Yes, but life is 60 years, so there's no – you have to serve 100% of the term. So that's what – that's where we're getting. 100% of the 60 years. We're saying it's 100% of the 60 years. We're saying it's after 15%, which is how you get to 51. Correct. The term 51 is nowhere in the code. That assumes the maximum reduction of 15%. Correct. But how do we know, again, life is 60 years? Because of the language in H. H redefines life sentence to meaning 60 years. Correct. Not actual life. And I believe that was enacted with the original overall resentencing reform of 1989, so that's what was there in 95 when the new statute was put in place. And does the Tennessee Court of Criminal Appeals have jurisdiction over the whole state? Yes. Or do they sit in various districts that compete with one another for – they can issue different rulings, like in Ohio? It is – both the Court of Appeals and the Court of Criminal Appeals are statewide. And I disagree – But they sit. They sit in sections, but they decide as a court. I believe the Court of Appeals does some, but they've moved away from that. The Court of Criminal Appeals for decades has sat in panels all over the place. But they're bound by each other's precedent. They are. By their own published decisions, they are. They sit essentially as a single court, unlike what we see in some other states. Yes, Your Honor, I think it would be more akin to this court, the layout of this court. Is she eligible for parole in 25 years then? No, no. That portion of age does not apply. Why? Based upon Vaughan. Vaughan says the minimum service is 51 years. But the statute says 25. Those are for offenses committed on or before July 1, 1995. I don't disagree this – you have to unpack and kind of go through the evolution and the chronology of the case law. But Vaughan itself – the only way Vaughan – So you think there's some uncertainty about all this or not? I mean, I thought you started out saying certification was a good idea. But if there's no real uncertainty about it, then I don't see going through that necessarily as being a good idea. I don't – I do not believe certification – I think the only thing certification would do would be delay resolution of the case. There are a couple other problems you add in, in terms of – Can I ask you one other question about that? I'm sorry, because you were saying that's the position you're going to take, that she is eligible for parole. But this – where's the date qualifier in this section? It's from Vaughan itself. Vaughan says H applies for offenses that occur prior to July 1, 1995. Then why does the 60% apply? Because Vaughan itself states the minimum service for a first-degree murder sentence under I is 51 years. But you can only say that if you move the 60-year – life of 60 years from H to I. The part that doesn't apply after 1995, you're now going to move. But the court actually did apply in Vaughan by saying – I'm sorry. By saying 51 years. I'm sorry. That was related to the ineffective assistance claim. It was related to determining what the law – sentencing law for first-degree murder at the time of that offense, July 2nd of 1995, was. My point is the argument made by the petitioner is one that has not been, to my knowledge, made. It certainly has not been adopted in Tennessee. The consistent construction of these statutes has matched what the attorney general's office first stated in 1997 that Vaughan followed in 2006. The general assembly has never changed it in light of that construction. Furthermore – and this would be, I think, more pertinent to the Supreme Court and the state Supreme Court in certification is they have a statute. They have a canon statute for construction that they must avoid a construction of a statute that creates a constitutional problem… …if there is a reasonable construction available. And the construction that has been followed for two decades is a reasonable construction because what the petitioner is asking is for certification for the Tennessee Supreme Court to construe the statute in what the petitioner believes is unconstitutional. And that court cannot do that if there is a reasonable construction available. And all that seems reasonable to argue to them, but I just don't think it's an unfair request to say, don't let me wait 51 years and then find out I've really got a life without the eligibility of parole. Because I could – the way I read this statute, it sounds like she's got life without the eligibility of parole. But you're right that Vaughan did say that. And again, to reiterate what I said before, we have no vigorous objection to the court doing that. And, of course, that court – and under the process, I do want to answer one question I think Judge Larson raised. There are two different kinds of certified questions in Tennessee. The one we normally see are certified questions of law from state court decisions where there's a guilty plea that the parties reserve, and that's one that must be dispossessed. This – Under Rule 23, Tennessee Supreme Court Rule 23? Tennessee Supreme Court 23, the court – it's in their discretion, but it will do it when it appears to the certifying court, which would be this court, there is no controlling precedent in the decisions of the Supreme Court of Tennessee. So I think that's the issue. In a proceeding before it, there are questions of law of Tennessee which will be determinative of the cost, so it's got to be dispositive, and which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee. Okay. Well, and I'm not – again, to reiterate what I said about – under their construction, I'm not going to disagree. It would be dispositive because there was no mechanism under state law to consider usefulness or any mitigation circumstances before the sentence was imposed. Our argument, getting to the merits, which I will rely on my brief for, is that this is government at the deference. Assuming my read of – Why didn't you say March? Your Honor, I think I read it when I – in the briefing, but from Your Honor's recitation of it, I think one thing that jumped out to me is you have a little different situation when it's consecutive sentences. When you are – There's no doubt. But if you are – Go ahead. No, I was just going to ask why would that be? I mean if you have consecutive sentences that are stacked – if we're talking about functional life without parole rather than a de jure sentence of life without parole, stacking consecutive sentences – I mean from the prisoner's perspective, it's life without parole, right? It's functional life without parole. But – and I'm not sure which state Bunch is from or the law there, but when you're involved in setting determinative sentences, at least in Tennessee, you have a sentencing judge considering enhancement and mitigating factors. Then you have a sentencing judge imposing – looking at certain state law requirements for consecutive sentencing. That's a little different here where I think the analysis is cleaner because it's an automatic life in prison. There's no role – that's why I don't know enough about Bunch to know – It's not one that has been selected. It's selected at the point of conviction. It's not selected based on this defendant. Correct. Correct. Can I ask you a different question? Sure. Because all the prisoner cares about and what the Supreme Court appears to care about if you're reading a functional life without parole land is whether they're serving 60 years in Tennessee or 100 years in Ohio or 89 years. And either one, the question is that as the Sixth Circuit framed it in Bunch is, is that a functional life without parole sentence? Why engage in these other semantics if the question is purely about years? Because I'm not sure it's just about years because you would have no – you have no problem with life without possible parole if there is a mechanism for the sentencing court to consider youthfulness and that mitigation. I'm not sure in Bunch or in other situations where you have determinative sentences set by a sentencing court and then an order of consecutive sentencing, if the youthfulness is considered… No, if it wasn't. It was stipulated. It wasn't considered. Okay. Well, if the system did not allow for that consideration, then I think you're closer to middle or theta. I'm just pointing out I think I read that decision when I was briefing it, but I hesitated to rely on it because you do have that nuance. This is – this doesn't involve additional sentencing court findings and actions. Okay. Mr. Pickford. Thank you, Your Honor. Thank you. I appreciate the call, but in particular because now I recall why Bunch is distinguishable, and that is the fact that with regard to the total amount of sentences and whether they would be consecutive or not, that was an individualized sentencing decision that was capable in that case, which is not capable in this case where the sentence is mandatory life imprisonment. That's distinguishing. Well, that's assuming this is mandatory life imprisonment, but we're going off the assumption that they're saying it's 60 years and that you can get out at 51. Then why – if they give a 60-year sentence, but it's not called life, and then they give a 60-year sentence and they call it life, it's really no different from a constitutional perspective. Not under the Supreme Court's decision in the earlier hour because Justice Kagan gave us two ways. No, I understand the two ways. Okay. And in Bunch, the way that where Miller – So those two ways are only triggered if you have a light sentence. No, that's not true, Your Honor. No, it shouldn't be. No, that's not true, Your Honor, because specifically the issue in Miller was two ways a state can avoid an incremental problem. One, as in – as the scheme that applies in Bunch, has an individualized decision-making at the time of sentencing, which is not the case in Ms. Brown's case where she was given an automatic life sentence and then the sequester remains open, I think the colloquy has demonstrated, whereas Tennessee statutes are completely ambiguous regarding what the law is regarding Ms. Brown's eligibility for parole. Do you disagree with Mr. Gledsoe about the subtle nature of Tennessee law? Absolutely, and the Tennessee Court of Appeals disagrees with Mr. Gledsoe. Remind me how the Tennessee Court of Appeals ended up having an opinion on this topic because, I mean, it's a civil elect court. Correct, and there was an injunction proceeding, and Redmond and Davis saw it in the Chancery Court. This is Weirich? This is Myrick. Myrick, I'm sorry. And in Myrick, the case was properly before the Chancery Court to determine whether or not the petitioner in that case was eligible for parole. And the chancellor ruled, and the appeal was taken to the Tennessee Court of Appeals, and there was no issue ever raised about the jurisdiction of the Tennessee Court of Appeals to determine whether or not a chancellor has the power to issue an injunction or a writ of mandamus regarding a decision regarding the lease eligibility for parole. And just as far as you ask for the language of I, I'll give it to you. And this is what the Court of Appeals and Myrick relied on. It's a simple reading of the language. There shall be no release eligibility for a person committing an offense on or after July 1, 1995 that is enumerated in subdivision I-2, which includes 1 first-degree murder and 2 second-degree murder, and then some other stuff. And no appeal was taken from that case? Or no petition to the Tennessee Supreme Court? I don't know whether a petition was taken or whether it was denied, but that is the final decision by the Tennessee Court of Appeals on this issue, Your Honor. And there's a clear split among the courts of appeals in Tennessee on this issue. It couldn't be clearer. Just as far as Shumway and the interpretation of the Attorney General's Office regarding subsection A is actually kind of strange, to be fair. I can't believe that this has been – that we've had these cases for that many years in Tennessee without some definitive ruling, but apparently we do not have. And the Myrick decision takes account of bond or doesn't take account of bond? And what it's doing this calculation of – does it take account of bond or does it just read the statute? I'll have to review the case, Your Honor, to see what it says about bond. Because the issue in bond really is that this question of release eligibility actually was not an issue in bond because it's about – whether 51 or life, that's not 25. You know that. And so there was ineffective assistance of counsel. Thank you, Your Honor. Thank you both for your argument. We'll consider the case carefully, of course, in raising some interesting and tricky issues. Thank you. Thank you. Thank you.